**REPUBLIC STEEL CORP., et al., Plaintiffs,**

**v.**

**UNITED STATES, et al., Defendants.**

**Court No. 82–2–00207.**

United States Court of International Trade.

April 29, 1982.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C. (David M. Cohen, Branch Director, Commercial Litigation Branch, Velta A. Melnbrencis, Commercial Litigation Branch, New York City), for defendants.

Cravath, Swaine & Moore, New York City (Alan J. Hruska, New York City, on the brief), for plaintiffs.

WATSON, Judge:

Defendants have moved for a protective order barring disclosure of pages 70, 71 and 178 of the administrative record in this action on the ground that the material they contain is subject to a "state secrets privilege." The administrative record has been forwarded to the Court as part of plaintiffs' action seeking judicial review of certain determinations of the International Trade Administration of the United States Department of Commerce (ITA) with respect to a petition in which plaintiffs sought, *inter alia*, the imposition of antidumping duties on steel exported from Romania.

The material for which protection is sought consists of two cables from the Department of Commerce to the American Embassy in Bucharest, Romania, describing conversations between the Ambassador of Romania to the United States and Gary Horlick, Deputy Assistant Secretary for Import Administration of the U. S. Department of Commerce. The conversations related to antidumping petitions filed against Romanian steel in the beginning of 1982.

In a supporting affidavit, Lionel H. Olmer, Under Secretary of Commerce for International Trade and head of the ITA, states that the Ambassador has requested that the content of the conversations remain confidential; that the documents were classified "confidential" by Deputy Assist-

ant Secretary Horlick in accordance with Executive Order 12065; and that "disclosure of the foreign relations information in these documents would be likely to have a serious effect on our bilateral foreign relations with Romania, thereby causing identifiable damage to the national security of the United States."

Plaintiffs oppose the motion for a protective order on the ground that defendant has not made a showing sufficient to invoke the state secrets privilege.

The Court finds that the motion does not show that the disclosure of this material would be prejudicial to foreign relations or a threat to national security. The motion is entirely conclusory on that point and relies on cases in which threats to national security were clearly pronounced and prejudice to U. S. foreign policy was apparent. Thus, in *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), it was clear that important military secrets were at stake. In *Republic of China v. National Union Fire Ins. Co.*, 142 F.Supp. 551 (D.Md. 1956) it was clear that the discovery sought involved the extremely sensitive question of recognition of Communist China, which was then anathema to the United States. In addition, plaintiffs point to the recognition of the states secrets privilege in cases involving the identity of persons performing intelligence work and similar matters touching on national security. *American Civil Liberties Union v. Brown*, 609 F.2d 277, 281 (7th Cir. 1979), *vacated on other grounds*, 619 F.2d 1170 (7th Cir. 1980) (*en banc*); *Halkin v. Helms*, 598 F.2d 1 (D.C. Cir.1978); *Sigler v. LeVan*, 485 F.Supp. 185 (D.Md.1980); *Spock v. United States*, 464 F.Supp. 510 (S.D.N.Y.1978); and *Jabara v. Kelley*, 75 F.R.D. 475 (E.D.Mich.1977).

Defendants have not shown that the matters for which they seek protection are in the same class as those for which the state secrets privilege has been recognized. Moreover, it must be recalled that the privilege is being asserted here in the context of a comprehensive statutory scheme for the judicial review of these administrative actions. A conclusory assertion of privilege is not sufficient to deny plaintiffs access to material which is part of the record on which the contested decision was made. This action does not involve an area of commercial activity such as civil aviation, in which a limited statutory scheme for judicial review recognizes special strategic and diplomatic ramifications and requires deference to decisions of the executive based on unelaborated "factors relating to our broad national welfare." See *C & S Air Lines v. Waterman Corp.*, 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1947).

Finally, the Court has examined this material *in camera* in accordance with 19 U.S.C. § 1516a(b)(2)(B). The examination showed nothing in the nature of a state secret, nothing suggestive of delicate matters of foreign policy and nothing else of a dimension entitled to a privilege against disclosure under the existing case law.

For the above reasons, defendant's motion for a protective order is denied.