CERAMICA REGIOMONTANA, S.A., PLAINTIFF v. UNITED STATES, ET AL., DEFENDANTS, TILE COUNCIL OF AMERICA, INC., INTERVENOR

Before BERNARD NEWMAN, *Judge.*

Court No. 82-6-00857

(Dated October 26, 1982)

*Stein Shostak Shostak & O'Hara (Irwin P. Altschuler* and *Steven P. Kersner, Esqs.,* of counsel), for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, and *A. David Lafer, Esq.,* for the defendants.

*Howrey & Simon (Kevin P. O'Rourke, David C. Murchison* and *John F. Bruce, Esqs.),* for the intervenor.

BERNARD NEWMAN, *Judge:* Plaintiff challenges the final countervailing duty determination and order issued by the United States Department of Commerce on May 10, 1982 respecting importations of ceramic tile from Mexico (47 FR 20012). Defendants have moved under Rule 26(c) of the rules of this Court for a protective order covering certain classified documents included in the administrative record, which record was transmitted to the Court in connection with this action. Asserting the state secrets privilege, defendants seek to preclude disclosure of the classified material in question [1] predicated upon a declaration of Lionel H. Olmer, Under Secretary for International Trade for the United States Department of Commerce (ITA).

Summarizing, Mr. Olmer's declaration avers:

During the course of the countervailing duty investigation, the Mexican government submitted several documents to the ITA for which Mexico requested, and was granted by the ITA, "confidential" status in accordance with Executive Order No. 12,065 (E.O. 12,065), dated June 28, 1978. These "confidential" documents are part of the administrative record in this case. Although E.O. 12,065 does not require non-confidential summaries, the government of

---

[1] The subject documents appear at the following pages of the administrative record: 237, 240, 242, 244-245, 258, 275A-276, 277-278, 335a-cc, 336a-b, 337a-dddd, 338a-q, 460-465, 547-548a, 550-551 and 1697-1698. The documents in question were submitted to the Commerce Department by the Mexican Government in response to the ITA's initial and supplementary countervailing duty questionnaires. Nonconfidential summaries for the majority of the questionnaire responses were provided simultaneously by the government of Mexico and these summaries are part of the public administrative record.

Mexico provided such summaries for the majority of the documents. However, in the non-confidential summaries, Mexico expurgated all material for which confidential treatment was requested.

Continuing, Mr. Olmer opines that disclosure of the confidential foreign government information in these documents is likely to have a serious adverse effect on our bilateral foreign relations with Mexico, thereby causing identifiable damage to the national security of the United States; and further, that if any of the documents in question were ever disseminated, the ITA would be seriously impeded from obtaining confidential foreign government information in future countervailing duty and antidumping investigations.

Plaintiff did not respond to defendants' motion, but the intervenor, has filed an opposition. For the reasons indicated hereinafter, defendants' motion is granted.

The privilege covering state secrets, encompassing matters whose disclosure would harm our national security or the international relations of the United States, is, of course, well established. See *United States* v. *Reynolds,* 345 U.S. 1 (1953); 8 Wigmore *Evidence,* § 2378, p. 794 (1961). However, in the Court of International Trade such privilege may not be regarded as "absolute", as urged by defendants, in light of 28 U.S.C. § 2641(b), which in pertinent part provides:

> The Court of International Trade may order that * * * any information provided to the United States by any foreign government * * * may be disclosed to a party, its counsel, or any other person under such terms and conditions as the court may order.

Although under the foregoing statute this Court is explicitly empowered and was granted discretion to order the disclosure of any information provided to the United States by any foreign government, I have concluded that under the particular facts and circumstances presented here, defendants' assertion of the state secrets privilege should be sustained.

In determining whether disclosure of particular documents should be ordered, due regard will be given to their "confidential" classification as "foreign government information" pursuant to the substantive and procedural criteria of E.O. 12,065, under which the President "in order to balance the public's interest in access to Government information with the need to protect certain national security information from disclosure" (43 FR 28949) provided for the classification of information, including information concerning foreign governments and foreign relations of the United States (section 1–301), 43 FR 28951.[2] According to Section 1–302 of the Ex-

---

[2] On October 5, 1978 E.O. 12,065 was carried out by a directive of the Interagency Classification Review Committee, Information Security Oversight Office (43 FR 46280). The Executive Order has been further implemented by the issuance of various guidelines and instructions by the Department of Commerce to ensure effective execution of, and compliance with, the Order.

ecutive Order, "[e]ven though information is determined to concern one or more of the [seven categories, including "foreign government information"] in Section 1–303, it may not be classified unless an original classification authority also determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security." *Carlisle Tire & Rubber Co.* v. *United States Customs Service,* 663 F.2d 210, 216 (D.C. Cir. 1980). Significantly, E.O. 12,065's definition of "national security" embraces the "foreign relations of the United States". E.O. 12, 065, Section 6–104, 3 CFR 190, 204 (1981).

Thus, we are faced here with the following significant factors in determining whether disclosure is appropriate: (1) The party submitting the countervailing duty information to the ITA was a foreign government (Mexico); (2) the Mexican government requested, understood and expected that its submissions would remain confidential; (3) the materials in question were classified by the United States Government as confidential "foreign government information" pursuant to E.O. 12,065; and (4) based upon the Government's classification of the documents as "foreign government information" under E.O. 12,065, disclosure of the documents is presumed to cause at least identifiable damage to the national security (which latter term includes the foreign relations of the United States). E.O. 12,065, § 1–303. Moreover, the uncontradicted declaration of Under Secretary Olmer supports that presumption and advises the Court that the disclosure of the confidential information contained in the documents in question would have a serious adverse effect on our bilateral relations with Mexico. Substantial weight must be accorded to the considered judgment of the Under Secretary that the disclosure of the confidential material in contravention of assurances of confidentiality would be prejudicial to our relations with Mexico. *Carlisle Tire & Rubber Co.* v. *United States Customs Service, supra,* at 216.

Under the present facts and circumstances where the disputed documents were properly classified in conformance with the substantive and procedural requirements of E.O. 12,065 following the explicit request of the Mexican government for confidential treatment, and in light of the E.O.'s section 1–303 presumption of identifiable damage to our international relations with Mexico (which has not been rebutted), the defendants have properly asserted the state secrets privilege. Unlike the circumstances in *Republic Steel Corp.* v. *United States,* 3 CIT 117, 538 F. Supp. 422 (1982) wherein the Government's conclusory assertions were held insufficient to show the applicability of the state secrets privilege, that privilege has been established in the instant case to the satisfaction of the Court.

The short answer to the intervenor's argument, that the expurgated matters should not have been accorded the status of confidential foreign government information because of their business

data content, is the following comment of the District Court in *Carlisle Tire & Rubber Co.* v. *United States Customs Service,* 1 ITRD 1891, 1897 (D.D.C. 1979):

> Protection of materials submitted in confidence by a foreign government may have an importance for national security and foreign relations *wholly independent of the contents of the documents.* Unlike other types of the information subject to classification, the status of foreign government information is determined by the identity of the party that submits the information, *and not the nature of the information itself.* [Italic added.]

Similarly here, the information supplied by the Mexican government in response to the ITA's questionnaires directed to it, even if comprised of confidential business data, may have a significance for our foreign relations "wholly independent of the contents of the documents".

Additionally, as pointed up by the Court of Appeals in *Carlisle Tire & Rubber Co.,* 663 F.2d at 219, n. 63:

> Carlisle argues, not unconvincingly, that foreign companies should not be able to convert their ordinary business information, for which they may request business confidential treatment under Exemption 4 [of the FOIA], into information entitled to national security confidential treatment under Exemption 1 merely by channeling that information through a foreign government. We cannot deny the possibility that cases may arise in which this is a legitimate concern. Carlisle did not present to the trial court, however, nor does it present to us on appeal, any prima facie proof that such subterfuge has taken place here. *In the absence of such evidence, we cannot find that the district judge erred in granting summary judgment for Customs on Exemption 1 grounds.* [Italic added.]

Respecting the intervenor's assertion of its need for the materials in question, intervenor merely articulates a general need for the materials to adequately present its view and positions as to the appropriate method of calculating the amount of the subsidy provided by the Government of Mexico through various programs. Such generalized allegation of need is clearly insufficient to overcome defendants' claim of a state secrets privilege.

Finally, the intervenor's belief that counsel for plaintiff has had access to the expurgated materials has not been established. The intervenor's request, that defendants' motion for a protective order be held in abeyance until "such highly relevant information has been received", is denied. If it can later be shown that the materials in question have been disclosed to plaintiff, intervenor may at that juncture take appropriate action.

Accordingly, defendants' claim of privilege is sustained; and their motion for a protective order pursuant to Rule 26(c) of the Rules of this Court is granted.